**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BETTY DEBELAK, | ) | CASE NO. 1:16-cv-02782 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Social Security*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Betty Debelak (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

# I. Procedural History

On November 4, 2013, Plaintiff filed her applications for POD and DIB, alleging a disability onset date of August 1, 2008. (Transcript ("Tr.") 168-174). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 111-135). Plaintiff participated in the hearing on October 1, 2015, was represented by counsel, and testified. (Tr. 45-84). A vocational expert ("VE") also participated and testified. *Id*. On October 27, 2015, the ALJ found Plaintiff not disabled. (Tr. 39). On September 14, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On November 14, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14, 17, 18).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly apply Social Security Ruling ("SSR") 82-62; (2) the residual functional capacity ("RFC") assessment was incomplete; and (3) the ALJ erred by failing to designate sleep apnea a severe impairment. (R. 14).

# II. Evidence

## A. Relevant Medical Evidence[1]

### 1. Treatment Records

On October 24, 2008, Plaintiff was seen by J. Bruce Resnik, M.D., for diabetes and general medical care. (Tr. 347). She was "doing well," was not using her sleep apnea equipment, did not

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

have significant hypoglycemia, displayed no clumsy hand weakness, had normal extremities, no edema, and had no difficulty performing her activities of daily living (Tr. 347, 349). Dr. Resnik diagnosed diabetes mellitus Type II, uncomplicated; hyperlipidemia; and respiratory abnormality. (Tr. 348).

On June 24, 2009, Plaintiff returned to Dr. Resnik for a dermatonal rash. (Tr. 355). He diagnosed herpes zoster. *Id*.

On June 15, 2011, Plaintiff saw Dr. Resnik for a comprehensive problem evaluation. (Tr. 365). She denied any "any joint swelling, crepitus, joint pain, or loss of range of motion. Denies back pain." (Tr. 366). Her extremities were normal with no edema, and she walked with a normal gait. *Id*. She had no problems completing her activities of daily living. (Tr. 369).

On September 12, 2011, Dr. Resnik saw Plaintiff for a rash. (Tr. 362). She reported some problems completing her activities of daily living due to her weight. (Tr. 364).

On December 9, 2011, Plaintiff underwent a mammogram, which noted a malignant mastectomy of the right breast ten years earlier in 2001. (Tr. 887). The exam revealed no evidence of malignancy and no significant changes since her last mammogram from three years earlier. *Id*.

On December 12, 2011, Plaintiff attended occupational therapy. (Tr. 304). Her functional impairment was listed as: "ADL home management, edema and girth, impaired active and passive range of motion, limited knowledge of lymph edema, impaired strength, no home exercise program, pain complaints and scar management. *Id*. She stated her main reason for attending occupational therapy was her "right arm from lymphedema." (Tr. 318).

On December 15, 2011, Dr. Resnik noted Plaintiff was compliant with her medications and tolerating them without any side effects. (Tr. 358). She reported no clumsy hand weakness and

no problems completing her activities of daily living. (Tr. 358, 361). Her extremities were normal with no edema. (Tr. 359).

On December 19, 2011, Plaintiff reported to her occupational therapist that she baked all weekend and her arm seemed okay. (Tr. 311).

On January 23, 2012, Plaintiff was seen by Perry M. Schall, M.D., for gout. (Tr. 421). She had no problems completing her activities of daily living. (Tr. 425). Physical examination revealed mild tenderness and redness of the ankle. (Tr. 422). The physician provided an injection of Toradol and prescribed colchicine for gout. *Id*.

On April 27, 2012, Dr. Resnik noted that he was "not convinced that [Plaintiff] is really having repetitive attacks of gout. She has lost weight and I question the possible relationship to her gout." (Tr. 377). He further noted that "[h]er thinking is quite wrong about most of her medical issues." (Tr. 418). She had no problems completing her activities of daily living. (Tr. 379). Her extremities were normal with no edema. (Tr. 378).

On September 6, 2012, Plaintiff returned to Dr. Resnik for diabetes, gout, and worsening liver function tests. (Tr. 373). She had no problems completing her activities of daily living. (Tr. 376). Her extremities were normal with no edema. (Tr. 373).

On January 3, 2013, Plaintiff again saw Dr. Resnik for abnormal liver function tests. (Tr. 384). She had no problems completing her activities of daily living (Tr. 386). Her extremities were normal with no edema. (Tr. 385). Sonographic examination revealed a normal, but fatty liver. (Tr. 395). Dr. Resnick diagnosed nonspecific elevation of levels of transaminase or lactic acid dehydrogenase (LDH), gout, and diabetes Type II. (Tr. 385).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On May 10, 2013, Dr. Resnik completed a Disability and Physical Capacities Evaluation. (Tr. 402-03). He noted diagnoses of lymphedema, generalized osteoarthritis, and COPD. (Tr. 402). Dr. Resnik checked boxes indicating Plaintiff could stand for 30-60 minutes; sit without any limitation; and walk for 0-30 minutes. (Tr. 402). Despite the unlimited ability to sit, Dr. Resnik indicated that the above activities could not be alternated so as to complete an eight-hour workday. *Id*. Despite indicating that Plaintiff did *not* need to lay down periodically throughout the day and that sitting was sufficient, she checked a box indicating Plaintiff would need to lay down due to her symptoms for 2 or more hours per day, and would be unable to attend work only 0-1 days per month. *Id*. He indicated Plaintiff should avoid all bending, kneeling, crawling, stooping, climbing, and lifting. (Tr. 403). He opined Plaintiff could lift up to five pounds occasionally and no weight frequently or repetitively. *Id*.

On December 20, 2013, Dr. Resnik completed a second form largely the same as the previous form. (Tr. 484-485).

On February 24, 2014, State Agency physician, Michael Delphia, M.D., completed a residual functional capacity assessment (RFC). (Tr. 91-92). Therein, he opined that Plaintiff, in an 8-hour workday, could lift 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours, sit for 6 hours, could frequently climb ramps/stairs, occasionally climb ladders, ropes, or scaffolds, and unlimited ability to balance, kneel, stoop, crouch, or crawl. *Id*.

On May 13, 2014, State Agency physician Gerald Klyop, M.D., reviewed the evidence and affirmed Dr. Delphia's RFC assessment. (Tr. 104-105).

## C. Relevant Hearing Testimony

At the October 1, 2015 hearing, Plaintiff testified as follows:

- She is 5'1" tall and weighs 230 pounds. She was heavier 2.5 years earlier on her date last insured. She is right-handed. (Tr. 51).

- She lives with her husband, who works full-time. (Tr. 51-52). She started receiving social security when she turned 62.[2] (Tr. 52).

- She has a driver's license and does not really have any problems driving, but does not drive often. (Tr. 52).

- She graduated from high school. (Tr. 53).

- Her last job was an automotive parts inspector in 2007 and 2008, but worked through a temp agency. (Tr. 53-54).

- Between November 14, 2005 and May 23, 2006, she worked as a receptionist, office clerk. (Tr. 55-56). She answered the phones, was "sort of" taught how to do quotes for different products, distributed paperwork to the people in the shop, cleaned up, and straightened things. The job did not involve lifting, other than paper files. (Tr. 56).

- She stopped looking for work in 2009 or 2010 when her unemployment ran out. (Tr. 58).

- Looking back to the time period when she was still insured 2.5 years earlier, she believed she could not work due to trouble walking, shortness of breath, limited use of her right arm, liver disease, and gout. (Tr. 59-60). Her medications resulted in frequent use of the restroom. (Tr. 60, 65).

- She had surgery in 2001 when nine lymph nodes were removed. Since the surgery, lifting aggravates her right arm and results in swelling. (Tr. 66). She has taken to using her left arm instead. (Tr. 72). She can reach with her right arm, but has difficulty grasping or lifting. (Tr. 75-76).

- Simply walking 50 or 60 feet can cause shortness of breath. It takes her about 5 minutes to catch her breath. (Tr. 70).

- When her blood sugar is up, she feels like "spacey" and feels like she is going to collapse. (Tr. 71).

---

[2] Plaintiff was born in February of 1952 (Tr. 168), and was 56 years old on her alleged onset date.

- She has been diagnosed with sleep apnea, but does not uses her CPAP because it is distracting. (Tr. 73). She wakes up frequently—two to three times per night. *Id*. She is tired during the day as a result. *Id*. She will nap at least once per week as a result. (Tr. 74).

The VE classified Plaintiff's past relevant work as follows: (1) parts inspector, light exertional but medium as described, with an SVP of 2 to 4; and office clerk, receptionist, sedentary exertional as described by Plaintiff and as typically performed with an SVP of 4. (Tr. 79-80).

The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual of the claimant's age, education and background with the past jobs that you've just described. Further assume this individual is limited to a range of light work. Occasional ramps and stairs. No ladders and scaffolds. And balancing, stooping, kneeling, crouching and crawling would all be occasional. No unprotected heights. No moving mechanical parts. No operating a motor vehicle.

(Tr. 80).

The VE testified that such an individual could perform the parts inspector job as generally performed but not as actually performed, and could perform the office clerk, receptionist position both as typically performed and as she actually performed it. (Tr. 80-81). The VE stated that his testimony was consistent with the Dictionary of Occupational Titles.[3] (Tr. 81).

The ALJ posed a second hypothetical question asking the VE to assume the same parameters except for a reduction to the sedentary level of exertion. (Tr. 81). The VE testified that such an individual could not perform the parts inspector job, but could perform the job of office clerk, receptionist. *Id*.

The ALJ posed a third hypothetical question asking the VE to assume the same parameters

---

[3] The ALJ instructed the VE at this time to let him know if any of his testimony was inconsistent with the DOT. (Tr. 81).

but added the extra limitation that such an individual would be off-task 15 percent of the workday. (Tr. 81). The VE responded that such a limitation is right on the cusp of what an employer would tolerate, and ultimately testified that such a person could still perform the job. (Tr. 81-82). The VE also testified that employers would tolerate only one absence per month for unskilled or lower level semiskilled work. (Tr. 82). Plaintiff's counsel asked no questions of the VE. (Tr. 83).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination

of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2008 through her date last insured of March 31, 2013 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: gout, obesity, diabetes mellitus, and chronic pulmonary insufficiency (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she can occasionally climb ramps and stairs but she can never climb ladders and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have no exposure to unprotected heights and occasional exposure to moving mechanical parts. She can occasionally operate a motor vehicle.

6.  Through the date last insured, the claimant was capable of performing past relevant work as an office clerk/receptionist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2008, the alleged onset date, through March 31, 2013, the date last insured (20 CFR 404.1520(1)).

(Tr. 34-39).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B. Plaintiff's Assignments of Error

### 1. Past Relevant Work

Plaintiff's first assignment of error contends that her past work as an office clerk/receptionist was a composite job that required duties not typical of the position such as vacuuming or giving product quotes. (R. 14, PageID# 947-954). Plaintiff, however, suggests that she did not acquire the skills necessary to perform the office clerk/receptionist job, because she only worked at that job for six months. *Id*. at ¶949.

At the hearing, the VE testified that the office clerk/receptionist position has an SVP of 4. (Tr. 79-80). Pursuant to the DOT, "Specific Vocational Preparation (SVP) is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Appendix C to the DOT - Components of the Definition Trailer*, 1991 WL 688702. "Specific vocational training includes … [o]n-the-job training (serving as learner or trainee on the job under the instruction of a qualified worker)." *Id*. The DOT explains that an SVP of 4 involves training "[o]ver 3 months up to and including 6 months." *Id*. Plaintiff suggests the ALJ failed to delineate how much time she spent performing each task and, therefore, a remand is necessary. (R. 14, PageID# 949).

In other words, Plaintiff maintains that she may not have spent enough time learning the skills typically associated with the position if she spent a portion of her workday performing tasks not associated with the position. Plaintiff's argument is pure conjecture, as there is no indication that she did not learn the skills associated with the job. Furthermore, the DOT does not require a minimum of six months training to satisfy the SVP level of 4, as anywhere between three months to six months may be sufficient to learn the job. Such conjecture or ambiguity does

11

not require a remand, as found by the Sixth Circuit:

> At best, [Plaintiff] left it ambiguous whether she worked that job for three months or not. As "the claimant bears the burden of proving ... that she is precluded from performing her past relevant work," that ambiguity is insufficient. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The SSA gave Wilson multiple opportunities to provide more information, such as through a work history report that she completed. When doing so, however, Wilson omitted the hotel clerk position. The ALJ also asked her several questions at her hearing regarding her past work, but Wilson again failed to discuss working in a hotel. Accordingly, Wilson failed to carry her burden of demonstrating she could not return to her hotel clerk position because of insufficient time on the job.

*Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 460 (6th Cir. 2008); *accord Gotsis v. Comm'r of Soc. Sec.*, No. 12-CV-10075, 2013 WL 1289280 at *6 (E.D. Mich. Mar. 28, 2013) ("Because Plaintiff has only, at most, established an ambiguity as to the nature of his past work and whether he can return to work as a restaurant manager, Plaintiff has not met his burden of demonstrating an inability to perform his past relevant work."); *Van Alstine v. Comm'r of Soc. Sec.*, No. 1:08-CV-172, 2009 WL 782297 at *7 (W.D. Mich. Mar. 19, 2009) ("As the party with the burden of proof at Step 4, the onus was on plaintiff to provide clarity regarding the functional demands of his past relevant work and his ability to perform that work."). Similarly here, neither Plaintiff nor her counsel directed any questions to the VE that would have called into question whether Plaintiff spent sufficient time learning the skills of the job.

Plaintiff cites SSR 00-4p, but is unclear how Plaintiff believes the ruling was violated. (R. 14, PageID# 951). Generally, the SSR cautions as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). The Sixth Circuit has addressed questions of

alleged inconsistencies between the VE's testimony and the DOT as follows:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00–4p when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. *Id*. **This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief**. *See Ledford v. Astrue*, 311 Fed . App'x 746, 757 (6th Cir. 2008).

*Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x. 163, 168–169 (6th Cir. 2009) (emphasis added);

*accord Albrecht v. Comm'r of Soc. Sec.*, No. 1:14 CV 2116, 2015 WL 4985475 at *7 (N.D. Ohio

Aug. 18, 2015); *Wood v. Colvin*, No. 13-CV-12572, 2014 WL 1377814 at *9 (E.D. Mich. Apr. 8,

2014) ("Since Wood did not take issue with this testimony at the hearing, the ALJ was entitled to

rely on the VE's testimony.")

Here too, the ALJ expressly asked the VE if his testimony was consistent with the DOT, to

which the VE responded in the affirmative. (Tr. 80-83). Since Plaintiff's counsel herein also did

not elicit any inconsistencies at the hearing between the VE's testimony and the DOT, the ALJ

did not err by relying on the VE's unchallenged testimony.

Finally, it appears Plaintiff's brief is arguing that the ALJ erred when finding she could perform her past relevant work. Plaintiff contends she could not fulfill the demands of the job as she actually performed it, rather than how the job is generally performed. (R. 14, PageID# 947-954). Plaintiff's reply brief points out that the job as she performed it was different than as defined in the DOT. (R. 18, PageID# 993). But Plaintiff's argument is without merit, as it is immaterial whether Plaintiff could not return to the exact same job so long as she could perform the job as generally performed in the national economy. The ALJ specifically found that Plaintiff could perform her past job of an office clerk/receptionist as it is generally performed. (Tr. 39).

In addition, Step Four is a two-step inquiry. First the ALJ considers whether the claimant has the RFC to perform the functional demands and duties of a past job as she actually performed it, and, if not, then second determines whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995). SSR 82-61, 1982 WL 31387 (Jan. 1, 1982), explicitly acknowledges that "[a] former job performed in [sic] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.. [but] if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*; *accord Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002) (finding it immaterial if claimant could not perform past relevant work as she performed it in the past, as the ALJ also found claimant was capable of performing her past

relevant work as that work is generally performed in the economy).

For the foregoing reasons, Plaintiff's first assignment of error is without merit.

## 2. Residual Functional Capacity Determination

Plaintiff's second assignment of error asserts the ALJ erred by failing to include a restriction that she cannot use her right upper extremity. (R. 14, PageID# 955-956). The Commissioner responds that Plaintiff's alleged limitation is based primarily on her own testimony, which was inconsistent with the medical evidence. (R. 17, PageID# 982).

The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental

---

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "In formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he deems credible." *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

Plaintiff is correct that the ALJ's RFC finding did not contain any limitations related to Plaintiff's ability (or inability) to use her right arm, save for the lifting restrictions associated with sedentary work. (Tr. 35). However, the ALJ did not find Plaintiff credible with respect to the severity of the limitations alleged:

> The claimant alleged that she was disabled due to a variety of conditions, including diabetes, neuropathy, fatty liver, chronic obstructive pulmonary disease, depression, gout, and lymphedema (2E/2; 5E/l). She also stated that she was 5'3" and 245 pounds (2E/2). She said that she became fatigued easily and she often became short of breath (3E/2). The claimant asserted that she could not sit or stand for extended periods due to pain in her back, legs, and knees (3E/2). **Additionally, she reported that she had trouble gripping objects** (3E/2). She further claimed that she could lift up to five pounds and she had difficulty squatting, bending, reaching, and kneeling (3E/7).
>
> After careful consideration of the evidence, I find that the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms; however, **the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision**.

The record reflects that the claimant had a history of several conditions predating the alleged onset date in August 2011, including diabetes and obesity (4F/8). In October 2008, the claimant said she was doing well overall with no diabetes complications (4F/3). Her objective exam was unremarkable (4F/3).

During June 2009, the claimant had a flare of herpes zoster, but she had no other complaints (4F/l l). Thereafter, she had no apparent substantial complaints regarding her chronic conditions for nearly two years. In June 2011, the claimant had report had [sic] a check-up for her numerous conditions (4F/21). Her body mass index (BMI) was 53.16 (4F/22). However, she had normal range of motion in her back and neck, with normal extremities and a normal gait (4F/22).

The claimant went to occupational therapy during late 2011, **to treat right arm lymphedema** related to previous breast cancer surgery (1F;3F). In a December diabetes check-up, she denied having excessive thirst or urinary frequency (4F/14). Her A1c was 6.0 (4F/14). Nevertheless, **her extremities were normal** and she had no diabetes complications (4F/15).

As for the opinion evidence, several of the claimant's friends and family members composed letters reporting that the claimant had difficulty completing tasks and she had severe energy deficits (15-18E; 21E; 22E). They stated that the claimant had limited ability to stand, sit, walk, and **use her upper extremities** (Id.). They also reported that the claimant slept poorly and she struggled to complete daily activities (Id.).

**I give little weight to the assessments of the claimant's friends and family**. In evaluating such opinions, I considered the probative value of their evaluations pursuant to SSR06-3p. By virtue of their relationships with the claimant, they cannot be considered disinterested third parties whose opinions would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the lay opinions because they are not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(Tr. 36-37) (emphasis added).

Because the ALJ determined that Plaintiff's representations concerning her symptoms,

including limitations related to the use of her upper extremities, were not credible, he did not err

by omitting any limitations that would have precluded or limited the use of Plaintiff's right upper extremity. Further, Plaintiff's Brief on the Merits has not developed a legal argument alleging any substantive or procedural deficiency regarding the ALJ's credibility analysis. Accordingly, she has waived any argument on the issue. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

In addition, neither of the State Agency physicians' opinions supported a prohibition against the use of the right arm. The ALJ ascribed these opinions some weight. (Tr. 38). Thus, the RFC is supported by evidence of record. Plaintiff's second assignment of error essentially asks the court to conduct a *de novo* credibility determination, to find that the severity of Plaintiff's alleged symptoms were credible, and to find a restriction with respect to the right upper extremity should have been included in the RFC. This court's role in a social security appeal is not to conduct a *de novo* review of the evidence, to make credibility determinations, or to reweigh the evidence. *Brainard*, 889 F.2d at 681. The court finds the second assignment of error is without merit.

### 3. Sleep Apnea as a Severe Impairment

As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "At step two 'significant' is liberally construed

in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…") The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

In her final assignment of error, Plaintiff contends the ALJ erred by failing to designate sleep apnea among her "severe" impairments. (R. 14, PageID# 957-958). Here, the ALJ designated several impairments as severe, including the following: gout, obesity, diabetes mellitus, and chronic pulmonary insufficiency. (Tr. 34). While the ALJ did not designate sleep apnea as "severe," failure to do so is not of any particular significance. Because an ALJ must move on to the subsequent steps in the sequential evaluation if only one impairment is found to be "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir.2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)). After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184 at *5 (Jul. 2,

1996).

The ALJ's decision not to designate an impairment as "severe" at step two does "not constitute reversible error," when the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation, *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577. Here, the ALJ designated sleep apnea—as well as hyperlipidemia, herpes zoster, toxic erythema—as non-severe impairments. (Tr. 34). Nevertheless, the ALJ stated that "despite the non-severe finding, any limitations caused by such impairments are incorporated in the residual functional capacity set forth below." *Id.*

Although Plaintiff is correct that the ALJ did not designate sleep apnea as a "severe" impairment, the ALJ found multiple severe impairments, continued with the sequential evaluation, and considered the impact of non-severe impairments when arriving at the RFC. While Plaintiff testified that sleep apnea causes daytime drowsiness, she does not demonstrate how the RFC was inadequate, and does not point to any particular work related limitations that should have been included. Further, the ALJ acknowledged Plaintiff's claims that she became easily fatigued and slept poorly (Tr. 36-37), but specifically found Plaintiff statements concerning her symptoms were not entirely credible. (Tr. 36). As discussed above, Plaintiff has not taken issue with the ALJ's credibility determination, which is entitled to substantial deference.

Moreover, Plaintiff has not pointed to any opinions from medical sources suggesting that her sleep apnea would result in limitations inconsistent with the demands of the RFC. As such, she has not established that failure to include the aforementioned impairments in the category of severe impairments resulted in reversible error. *Vidot v. Colvin*, No. 1:14 CV 1343, 2015 WL

20

3824360 at *2 (N.D. Ohio June 18, 2015) ("any failure on the part of the ALJ at step two to consider plaintiff's migraine headaches to be a severe impairment is 'legally irrelevant' because the ALJ found that plaintiff suffers from other severe impairments") (Gaughan, J.).

For the foregoing reasons, the third assignment of error is without merit.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: November 14, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).